E-FILED
Monday, 06 April, 2026  12:03:49 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

STEPHANIE RUSK,

    *Plaintiff,*

v.

HENRY COUNTY, ILLINOIS,

    *Defendant.*

Case No. 4:25-cv-04076-SLD-RLH

## ORDER & OPINION

Stephanie Rusk is a nurse who began working for the Henry County Health Department in June 2021. She held that position for three and a half years, receiving generally positive performance reviews throughout. But when she took leave under the Family Medical Leave Act (FMLA), the County told her that it was restructuring its health department and fired her. Rusk suspected the County's explanation a pretext, so she filed this FMLA suit three months later.

Discovery is ongoing. The County has invoked the attorney-client privilege to withhold an email chain among its employees generated days after Rusk's termination. It has also withheld an audio recording of the County Health Board's closed session, citing state law. Rusk has filed a motion to compel both. The documents are privileged, so Rusk's motion to compel will be denied.

## BACKGROUND

Rusk's motion seeks two categories of documents. The first concerns email communications among Steven Martell, the County's Behavioral Health Manager;

Naomi Stahl, its HR director; and Duane Stevens, its Public Health Administrator. (*See* Doc. 21-1 at 1–3.) The emails were all exchanged on the same date—January 13, 2025—three days after Rusk was told that her position had been eliminated. (Doc. 21 at 9.) It turns out that before Rusk's termination, Stahl and Stevens had met with the County's attorney to discuss the legal implications of that decision. According to the County, the emails it withheld relate to information "requested by the County's attorney" during the meeting. (Doc. 22 at 4.)

The second category is a category of one: the audio recording of a closed session of the County Health Board on November 5, 2025—seven months after the onset of this litigation. Among the topics discussed, according to the County's privilege log, was this case. (Doc. 21-1 at 3.) And during that discussion, the County says, the Board discussed information provided by the County's lawyer on an earlier conference call. (Doc. 21-1 at 3.)

## LEGAL STANDARD

This case presents a federal question, so federal privilege law applies. *See* Fed. R. Evid. 501. The attorney-client privilege protects communications made in confidence by a client to an attorney for the purpose of securing legal advice. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). As that definition suggests, the privilege generally protects only communications authored or received by an attorney. *See Gerba v. Nat'l Hellenic Museum*, 338 F. Supp. 3d 851, 858 (N.D. Ill. 2018). This makes sense: Its purpose is to encourage the "candor necessary to obtain legal advice," *In re Feldberg*, 862 F.2d 622, 627 (7th Cir. 1988), and such advice is generally communicated by attorneys to their clients. But when it comes to

corporations and other legal entities, the limitation makes less sense. After all, corporations can only act (and think) through their agents. *Consumer Fin. Protection Bureau v. TransUnion*, 641 F. Supp. 3d 474, 483 (N.D. Ill. 2022). The privilege thus extends to communications among non-attorney employees when they reflect the attorney's "legal thinking and forward-looking strategy." *In re Testosterone Replacement Therapy Prods. Liab. Litig. (TRT)*, 301 F. Supp. 3d 917, 923 (N.D. Ill. 2018). Extending the privilege in this way affords "corporations the space to collectively discuss sensitive information" without risking waiver. *Roth v. Aon Corp.*, 254 F.R.D. 538, 542 (N.D. Ill. 2009).

## DISCUSSION

Rusk's motion to compel seeks two categories of documents: an email chain among non-attorney employees of the County and an audio recording of the County's closed session in early November 2025. Both are privileged.

### I.    The January 13 Email Thread Is Privileged

The principles above all but resolve category one. Rusk seeks an email thread exchanged among two County employees discussing information "requested by the County's attorney." (Doc. 22 at 4.) Disclosure of that thread would thus reveal the attorney's "legal thinking," *TRT*, 301 F. Supp. 3d at 923, and "relat[e] to legal advice regarding" the County's termination of Rusk while she was on FMLA leave, *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 433 (N.D. Ill. 2006).

Two cases are instructive. In *TRT*, the court sustained the attorney-client privilege over "e-mails exchanged only between non-attorney . . . employees" because the e-mails "reflect[ed] [the lawyer's] thinking and forward-looking strategy for the

present litigation." 301 F. Supp. 3d at 923. Similarly, the court in *Gerba* found privileged an email authored by the defendant's HR director "forward/summarizing information conveyed to attorney for purpose of obtaining legal advice." 338 F. Supp. 3d at 858. As in those cases, no lawyer was directly involved in the email thread that Rusk seeks. Yet, like those cases, the emails here relate to the provision of legal advice because they discussed information "requested by the County's attorney" in an earlier meeting. The emails are privileged.

Rusk disagrees, arguing that the email thread was not authored or received by an attorney. (Doc. 21 at 18.) But the privilege is not so narrow. As stated, an attorney need not be directly involved in the communication. Rusk also argues that the emails do not include the "rendering or soliciting of legal advice." (Doc. 21 at 18.) True, the emails may not literally reflect legal advice—an attorney was not involved in generating them. But they "relate to" such advice because they concerned potential litigation and were solicited by the County's attorney. *See Sulfuric Acid*, 235 F.R.D. at 433–34. The emails were therefore a necessary step in the County's ability to react to—and later solicit—advice from a lawyer. Candor in those discussions is precisely what the privilege is designed to facilitate. *See Feldberg*, 862 F.2d at 627.

Rusk's motion also identifies an important limitation: The attorney-client privilege protects communications, not facts. (Doc. 21 at 18.) So any facts relayed in the email exchange—for instance, a timeline of events leading to Rusk's termination—would not be privileged. But the *fact* that a communication relays facts does not strip it of protection; most communications reveal facts of some kind. As

Rusk correctly observes, the factual information contained in those emails is not privileged. But she must obtain it by other means, such as interrogatories, deposition testimony, or otherwise.[1]

## II.    The Audio Recording of the County's Meeting

Category two concerns an audio recording of a closed session of the County Health Board held seven months after Rusk filed suit. According to the County, the "purpose" of the meeting was to "discuss[] this litigation." (Doc. 22 at 13.) And during the meeting, County officials discussed information relayed to them by the County's attorney "earlier that same day." (Doc. 22 at 13.) The County withheld the recording on three grounds: the attorney-client privilege, the deliberative process privilege, and the Illinois Open Meetings Act.

To the extent that the recording concerns legal advice communicated to County officials by their attorney, it is privileged for reasons already given: It relates to the provision of legal advice, and preventing its disclosure would encourage candor among members of the same organization who share a common legal interest. Rusk does not dispute that communications between Martell (the County's health manager) and its attorney would be privileged. The only question, then, is whether that privilege was waived when Martell shared those communications with the County board during the closed session. The answer is no. The "common interest doctrine" allows otherwise privileged communications to be "shared between parties having a 'common legal interest' without a resultant waiver." *Miller UK Ltd. v.*

---

[1] Because the Court finds the emails protected by the attorney-client privilege, it need not address the parties' attorney work product arguments.

*Caterpillar, Inc.*, 17 F. Supp. 3d 711, 731 (N.D. Ill. 2014). Here, all members of the County board—who were presumably acting in their official capacity as the County's agents—certainly share a common interest in avoiding liability on Rusk's FMLA claims. So Martell's disclosure to County officials of advice he received from an attorney does not waive the privilege that would otherwise apply to that advice. *See United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007).

Rusk counters that "[n]o attorney was present at the meeting." (Doc. 21 at 21.) But this argument suffers from the same flaw identified above: It assumes that the attorney-client privilege applies only to communications in which an attorney is directly involved. Not so. Rusk also argues that the County's privilege log states only that Martell relayed "information"—not legal advice. But this argument slices the bread too thin. On the County's telling, the entire purpose of the meeting was to discuss this litigation. That discussion would, of course, entail case strategy and the attorney's legal input about where the County stood. It is not only a fair inference but an unavoidable conclusion that Martell relayed legal advice. And for the reasons given, the privilege was not waived because a lawyer did not attend the meeting.[2]

---

[2] Accordingly, the Court need not address the Illinois Open Meetings Act or the deliberative process privilege.

## CONCLUSION

IT IS THEREFORE ORDERED that Rusk's Motion to Compel, (Doc. 21), is DENIED.


*So ordered.*

Entered this 6th day of April 2026.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge