E-FILED
Friday, 29 May, 2026 12:03:11 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| STEPHANIE RUSK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-04076-SLD-RLH |
| | ) | |
| HENRY COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court is Plaintiff Stephanie Rusk's objection, ECF No. 26, to Magistrate Judge Ronald Hanna's Order and Opinion (the "Order"), ECF No. 23, denying her motion to compel discovery from Defendant Henry County, Illinois ("the County"), ECF No. 21. Also before the Court is Rusk's motion for leave to reply, ECF No. 28, to the County's response to her objection, ECF No. 27. For the reasons that follow, Rusk's motion to reply is GRANTED and the Magistrate Judge's Order is VACATED.

BACKGROUND

This discovery dispute arises in a suit by Rusk alleging that the County violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654, by eliminating her employment position as a Behavioral Health Registered Nurse while she was on medical leave and not offering employment in an equivalent position upon her return. *See generally* Compl., ECF No. 1. The parties agree that Rusk was approved to take leave under the FMLA from November 14, 2024, to January 30, 2025, and that on January 10, 2025, the County sent Rusk a letter informing her that her position had been eliminated and offering her a position as a Patient Service Representative. *See* Ans. 8–9, ECF No. 8. The parties dispute whether the departmental reorganization that led to the termination of Rusk's position was caused by financial challenges

1

or was for the purpose of discrimination and retaliation.  *Compare id.* at 16–18, *with* Compl. 12–13.

After discovery commenced, the County provided a privilege log detailing the materials it believed were protected from discovery.  *See* Original Privilege Log, Mot. Compel Ex. 2, ECF No. 21-2.  As relevant here, the County sought to protect several emails exchanged on January 13, 2025 between Stephen Martell, Naomi Stahl, and Duane Stevens (the "January 13 emails"), two documents sent on that same date from Martell to Stahl and Stevens (the "January 13 documents"), and an audio recording of a County Health Board closed session on November 5, 2025 (the "November 5 recording").  *See id.* at 3–4.

Seeking to resolve a dispute regarding these three categories of materials, the Magistrate Judge held a discovery conference, where he directed the County to "supplement its privilege logs to include specific facts describing the nature of the documents and communications withheld so as to permit meaningful assessment of the asserted privileges."  Feb. 25, 2026 Minute Entry.  The updated privilege log, Mot. Compel Ex. 1, ECF No. 21-1, did not resolve the dispute, and Rusk filed a motion to compel production of these materials, *see* Mot. Compel. Defendants responded that the January 13 emails and the January 13 documents are protected by both attorney-client privilege and the work product doctrine, and that the November 5 recording is protected by Sections 2 and 2.06 of the Open Meetings Act, 5 ILCS 120/2(c), 2.06(e), the deliberative process privilege, attorney-client privilege, and the work product doctrine.  *See generally* Resp. Mot. Compel, ECF No. 22; Updated Privilege Log.

The Magistrate Judge issued the Order denying Rusk's motion to compel because the materials are protected by attorney-client privilege on April 6, 2026.  Order 1.  It did not address

any of the other asserted grounds for non-disclosure.  Rusk timely objected to the Order under

Federal Rule of Civil Procedure 72(a), prompting this Court's review.

Rusk avers that the Order is erroneous for four reasons: (1) "the Order failed to address

the two documents Rusk sought to compel;" (2) "the Order improperly relies upon unsworn and

unsupported averments of the County that do not appear in either privilege log;" (3) "an attorney

merely directing an employee of its client to investigate does not cloak the records of that

investigation in attorney-client privilege;" and (4) "merely because some legal advice might have

been discussed on the audio recording does not cloak the entirety of the recording in attorney-

client privilege."  Obj. 3.  The County opposes Rusk's objection, *see* Resp. Obj., and Rusk seeks

leave to reply to address the County's arguments, *see* Mot. Reply.

## DISCUSSION

### I.    Motion for Leave to Reply

Under the Local Rules, "[a] reply to the response is only permitted with leave of Court."

Civil LR 7.1(B)(3).  The Court grants leave to reply when the non-movant introduces new and

unexpected issues in its response, or in the interest of completeness.  *Magnuson v. Exelon Corp.*,

658 F. Supp. 3d 652, 658 (C.D. Ill. 2023).  "[T]he Court does not typically permit the moving

party to file a reply in order to introduce new arguments or evidence that could have been

included in the motion itself, or to rehash the arguments made in the motion."  *Shefts v. Petrakis*,

No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011).  Rusk argues that a reply is

appropriate because "[t]he Response makes several arguments about the Magistrate Judge's

Order that have no support in the Order which Plaintiff could not have reasonably anticipated."

Mot. Reply 2.  She specifically notes the County's assertion that it did not submit any material

factual information not included in the privilege logs in its response to the motion to compel, and

3

its argument that comity principles support the protection of the November 5 recording. *Id.* The Court finds that these arguments merit a reply and therefore GRANTS Rusk's motion for leave to reply.

## II.    Review of Order and Opinion

### a.    Legal Standards

#### i.    Appeal from Magistrate Judge Order

Federal Rule of Civil Procedure 72(a) provides that a party may object to a magistrate judge's written order on a non-dispositive matter within 14 days.  "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made."  *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

#### ii.    Attorney-Client Privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  It protects from disclosure during discovery or in a court hearing all "confidential communications between a client and an attorney for the purpose of obtaining legal advice."  *Denius v. Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000).  The purpose of this privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn*, 449 U.S. at 389.  The Seventh Circuit has articulated a two-part test to determine whether the attorney-client privilege applies: "(1) whether legal advice of any kind was sought from a

4

professional legal adviser in his capacity as such; and (2) whether the communication was related to that purpose and made in confidence by the client." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (quotation marks and alterations omitted). "[T]he party seeking to establish the privilege[] bears the burden of demonstrating that all of the requirements for invoking the attorney-client privilege have been met." *In re Grand Jury Procs.*, 220 F.3d 568, 571 (7th Cir. 2000).

"The administration of the attorney-client privilege in the case of corporations . . . presents special problems" because "a corporation must act through agents." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). The same is true of local government units like counties. In such cases, the privilege can extend to communications between two non-attorney agents "if they reflect the lawyer's thinking or are made for the purpose of eliciting the lawyer's professional advice or other legal assistance." *Gerba v. Nat'l Hellenic Museum*, 338 F. Supp. 3d 851, 857 (N.D. Ill. 2018). Because this is a fact-intensive inquiry, "[a]n assertion of privilege . . . must be made on a document-by-document basis." *In re Grand Jury Procs.*, 220 F.3d at 571.

### b.  Analysis

After careful consideration of the Order, the Court is left with the firm conviction that a mistake was made.

First, the Order fails to independently discuss the January 13 documents. "When claims of privilege are contested, they must be resolved on a document-by-document basis." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013) (citing *Am. Nat'l Bank & Tr. Co. of Chi. v. Equitable Life Assurance Soc'y of the U.S.*, 406 F.3d 867, 879–80 (7th Cir. 2005)). Rusk's objection notes that she sought to compel the production of three categories of records:

the January 13 emails, the January 13 documents, and the November 5 recording.  *See* Obj. 4; Mot. Compel 18–22.  However, the Order only addresses two categories: the January 13 emails and the November 5 recording.  *See* Order 1–2 ("Rusk's motion seeks two categories of documents.").

It is possible to read the Order as addressing the January 13 documents.  As the County argued, courts have held that when the attorney-client privilege protects emails, it can also protect attachments to those emails.  Resp. Mot. Compel 8–9; *see S. Capitol Bridgebuilders v. Lexington Ins. Co.*, No. 1:21-cv-1436-RCL, 2022 WL 444098, at *7 (D.D.C. Feb. 14, 2022).  The court in *South Capitol Bridgebuilders* convincingly reasoned that "communication disclosing non-privileged information to an attorney might be privileged on the grounds that the fact of disclosure has its own, independent significance."  *Id.* (quotation marks omitted).  That is, regardless of the contents of the documents, the attachments to the emails may be protected by attorney-client privilege because the fact of their disclosure in the context of seeking legal advice is privileged.

Further, in its briefing in response to Rusk's motion to compel, the County discussed the emails and documents together as a single category.  *See* Resp. Mot. Compel 3 ("Attorney-client privilege prevents disclosure of the January 13, 2025, communications and documents.").  The Order could reasonably have adopted this taxonomy and used the terms "email exchange" and "communication" to include both the body of the email and the attachments thereto.  However, the Order does not expressly do so—it nowhere clarifies that its discussion of the January 13 emails sweeps into its ambit the January 13 documents.

Even if the Order intended its discussion of the January 13 emails to include the January 13 documents, it did not address the possibility that the documents are discoverable apart from

their capacity as attachments to the email exchange.  Just as facts are not shielded from discovery merely because they are included in communication with an attorney, *see Upjohn*, 449 U.S. at 395–96, documents are not protected merely because they are at some point attached to a privileged email, *see Linet Ams., Inc. v. Hill-Rom Holdings, Inc.*, 740 F. Supp. 3d 685, 706–08 (N.D. Ill. 2024).

Second, the Order relies upon unsworn averments in the County's brief.  "Counsel's unsupported statements are, of course, not evidence."  *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008).  Rusk's objection identifies several factual assertions in the County's response to her motion to compel that were not supported by any factual basis.  *See* Obj. 5–6.  Conversely, the County contends that its response to Rusk's motion to compel did not add any material facts that were not already available in the privilege log, discernable from the context of the discovery dispute, or able to be inferred from one or both of these.  *See* Resp. Obj. 3–6.

With respect to the November 5 recording, the Magistrate Judge determined that the entirety of the recording was privileged.  In so ruling, he noted that "[o]n the County's telling, the entire purpose of the meeting was to discuss this litigation."  Order 6.  Judge Hanna relied on the County's statement in the response to the motion to compel that "the Board entered executive session for the purpose of discussing this litigation and reviewing information about the case that counsel provided to Stevens earlier that same day."  Resp. Mot. Compel 13; *see* Order 5 (citing Resp. Mot. Compel 13).  However, the updated privilege log states that the "[r]ecording *includes* discussion of this litigation," Updated Privilege Log 3, not that the recording is *limited to* discussion of this litigation.  The Magistrate Judge's belief that "the entire purpose of the meeting was to discuss this litigation," Order 6, presumably underlies his decision not to address whether any discrete portions of the meeting are discoverable.  *See Kodish v. Oakbrook Terrace*

7

*Fire Prot. Dist.*, 235 F.R.D. 447, 453 (N.D. Ill. 2006) (discussing the possibility that some communications during a meeting may be privileged while others are discoverable). Rusk's motion, on the other hand, expressly argues that some portions of the meeting may be non-privileged even if other portions are protected. *See* Mot. Compel 22. Since nothing besides attorney arguments stated that the meeting was for the sole purpose of discussing the litigation, the Order should have addressed the possibility that portions of the recording could be discoverable.[1]

The Order also found the January 13 emails to be protected because they relate to legal advice. Order 3. In its description of the context surrounding the January 13 emails, the Order states: "It turns out that before Rusk's termination, Stahl and Stevens had met with the County's attorney to discuss the legal implications of that decision [to terminate Rusk's position]" and that "the emails withheld relate to information requested by the County's attorney during the meeting." *Id.* at 2 (quotation marks omitted) (citing Resp. Mot. Compel 4). Of course, it is true that the privilege log states that the January 13 documents were created "at the request of counsel." Updated Privilege Log 1–3. And as the County notes, it reasonably follows that counsel requested the documents in a prior meeting. Resp. Mot. Obj. 3–4. But the specific facts discussed in the Order seem to come from the County's brief, which states that "[a]t the County's request, on January 3, 2025, Stahl and Stevens met with counsel to seek legal advice on the legal risks associated with the elimination of Rusk's position due to financial reorganization." Resp. Mot. Compel 3–4. The Order does not discuss whether the information in the privilege log

---

[1] In its response to Rusk's objection, the County cites the agenda for the November 5 meeting as evidence that the entire purpose of the closed session was to discuss this litigation. *See* Resp. Obj. 4 n.2. However, this agenda was not cited in the initial briefing, and it is improper for the Court to consider new evidence in review of the Order. *See For Your Ease Only, Inc. v. Calgon Carbon Corp.*, No. 02 C 7345, 2003 WL 21475905, at *4 (N.D. Ill. 2003) ("In reviewing a magistrate judge's nondispositive order for clear error, a district court may only properly consider the evidence that was before the magistrate judge at the time of the order.").

or possible inferences therefrom independently support its holding.  Instead, the Order frames its understanding of the facts on events disclosed nowhere but the County's briefing.  In light of this, the Court cannot confidently say that the Order would have reached the same conclusion if its understanding of the underlying facts did not rely on attorney argumentation.

The Court further notes that additional information would be helpful to resolve the motion to compel.  "The inquiry into whether documents are subject to a privilege is a highly fact-specific one." *In re Grand Jury Procs.*, 220 F.3d at 571.  Whether a communication between non-attorney employees that was requested by counsel is protected by attorney-client privilege depends on the content of the communication and the surrounding circumstances.  *See id.*; *Sandra T.E.*, 600 F.3d at 618 (asking "whether the communication was related to [the purpose of seeking legal advice] and made in confidence by the client" (quotation marks and alterations omitted)).  This is why, in the context of investigations prompted by counsel, courts have weighed factual considerations including: who the parties were to the communication, *Sandra T.E.*, 600 F.3d at 620 (noting that no third parties were present), whether the communication was marked as confidential, *id.* (finding relevant that a document was marked "Privileged and Confidential," "Attorney-Client Communication," and "Attorney Work Product"), and whether the parties to the communication knew it was for the purpose of legal advice, *Upjohn*, 449 U.S. at 394 ("[T]he employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice.").

In this case, relevant factual information would include whether the parties to the communication knew it was confidential, whether they were informed the communication was part of an investigation prompted by counsel, and whether the subject matter of the communication was in fact related to the provision of legal advice.  The privilege log does not

9

disclose any of this information.  Instead, it uses general descriptions like: "Document created by Stephen Martell at the request of counsel, Julie Bruch.  Counsel requested this document and the information provided therein to assist in providing advice to client in anticipation of litigation." Updated Privilege Log 2.  In cases like this, where the privilege log's description of the communication is factually vague, in camera review often plays an "important role" in determining whether communication is protected by attorney-client privilege.  *In re Grand Jury Procs.*, 220 F.3d at 571.  In short, it is not self-evident from the privilege log that the emails and documents were restricted to legal advice.  *See Gerba*, 338 F. Supp. 3d at 857 ("[The privilege] log has to describe the nature of the documents being withheld in a manner that will allow the reader to assess the validity of the claim of privilege.").  To resolve this question, it would be helpful to know further facts such as the relationship between the County and Bruch, when the document was created, the subject matter of the document, and whether the emails and documents included any discussion not detailed in the privilege log.  Perhaps an in camera review will be necessary to determine these facts.

## CONCLUSION

Accordingly, Plaintiff Stephanie Rusk's motion for leave to reply, ECF No. 28, is GRANTED.  The Clerk is directed to file the reply, ECF No. 28-1, on the docket.  The Order and Opinion, ECF No. 23, is VACATED.  Magistrate Judge Ronald Hanna should issue a new ruling on the motion to compel, ECF No. 21, in accordance with this Order.

Entered this 29th day of May, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE

10